**United States District Court**
For the Northern District of California

1

2

3

4                                          **E-FILED on    10/3/07**

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9               FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

12   WILLIAM SYVERSON, PATRICK BOONE,        No. C-03-04529 RMW
     LEE DESHLER, ROBERT FLOWERS,
13   BARRY GERARD, TINA GLEISNER,            ORDER GRANTING DEFENDANT'S
     THOMAS GOMEZ, EDWIN "DANA"              MOTION TO DISMISS
14   GOODLOE, ROLF MARSH, DANIEL
     MOCZAN, JAMES PAYNE, and ANTONIO        **[Re Docket Nos. 87, 93, 97, 98]**
15   RIVERA, individually and on behalf of others
     similarly situated,
16
                      Plaintiffs,
17
              v.
18
     INTERNATIONAL BUSINESS MACHINES
19   CORPORATION,
20                   Defendant.

21

22

23          Defendant International Business Machines ("IBM") brings this motion to dismiss plaintiffs'

24   claim for declaratory and injunctive relief for violation of the Older Workers Benefit Protection Act

25   ("OWBPA"), 29 U.S.C. § 626(f), and plaintiffs' disparate impact age discrimination claim as to

26   defendant's individual terminations of employees in violation of the Age Discrimination in

27   Employment Act ("ADEA"), 29 U.S.C. § 621.  The court heard oral argument on the motion on July

28   27, 2007.  The court has read the moving and responding papers.  For the reasons stated below, the

court grants defendant's motion to dismiss plaintiffs' first claim with prejudice and grants defendant's

motion to dismiss part of plaintiffs' second claim with twenty days' leave to amend.

## I. BACKGROUND

Plaintiffs are former employees of defendant. Second Am. Compl. ("SAC") ¶ 1. Plaintiffs

allege they are members of a class of persons protected by the ADEA, 29 U.S.C. § 626(b). *Id.* ¶ 6.

From July 1, 2001 through May 4, 2005, defendant began involuntary group terminations of

its workforce, called Resource Actions. *Id.* ¶ 48. Defendant performed at least 50 Resource Actions

during this period. *Id.* ¶ 49. As a result of these Resource Actions, tens of thousands of employees

were purportedly terminated from their employment by defendant. *Id.* ¶ 49. Plaintiffs allege that

defendant's procedures allowed managers directly responsible for making termination decisions to

use highly subjective criteria in implementing the Resource Actions. *Id.* With regard to group

terminations, plaintiffs allege that defendant refused to consider older individuals for placement

elsewhere in the company, retained younger employees to perform work formerly performed by

individuals 40 years of age or older who were selected for termination, recruited extensively at

colleges and universities, terminated employees over the age of 40 in order to no longer have to

contribute funds to their Future Health Accounts, and made stereotypical comments based on age.

*Id.* ¶ 51. Plaintiffs also allege that from July 1, 2001 through May 4, 2005, defendant engaged in the

practice of age discrimination in implementing individual terminations independent of the Resource

Actions. *Id.* ¶¶ 54, 55.

In both the Resource Actions and individual terminations, defendant offered severance

packages to employees selected for termination in exchange for signing a General Release and

Covenant Not to Sue ("Release"). *Id.* ¶ 8. All named plaintiffs terminated pursuant to defendant's

Resource Actions signed the Release with the exception of plaintiff Tina Gleisner. *Id.* ¶ 23.

Previously, this court entered an order granting defendant's motion to dismiss the complaint with

prejudice, holding that the Release was written in a manner understood by an average individual

selected by defendant for employment termination and that it was knowing and voluntary under the

OWBPA. On appeal, the Ninth Circuit held that the Release did not meet the minimum

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  requirements under the OWBPA and was therefore not enforceable as a matter of law. *Syverson v.*

2  *International Business Machines Corp.*, 472 F.3d 1072, 1075 (9th Cir. 2007).

3          Plaintiffs bring two causes of action against defendant. In the first cause of action, plaintiffs

4  allege that the Release is illegal on its face because it violates the OWBPA and regulations

5  implementing the OWBPA. SAC ¶ 58. In the second cause of action, plaintiffs allege a violation of

6  the ADEA based on the subjective use of procedures and criteria for implementing the group

7  termination Resource Actions, and for plaintiffs individually terminated allegedly based on age. *Id*.

8  ¶ 66, 67. For the first cause of action, plaintiffs seek an injunction preventing the reinstatement of

9  the Release, an injunction requiring defendant to inform all employees terminated between July 1,

10  2001 and May 4, 2005 that the Release is invalid, and an injunction preventing IBM from engaging

11  in further acts of discrimination against plaintiffs. *Id*. ¶ 2. Plaintiffs also seek an order equitably

12  tolling the statute of limitations period for all persons terminated during the same time period. *Id*. ¶

13  3. For the second cause of action, plaintiffs seek an injunction preventing defendant from engaging

14  in further acts of discrimination against plaintiffs, an order requiring defendant to reinstate plaintiffs

15  or award plaintiffs front pay, an award of back pay, liquidated damages, and attorney's fees. *Id*. at

16  17, 18.

17          Defendant moves to dismiss plaintiffs' first cause of action for violation of the OWBPA.

18  Defendant also moves to dismiss that portion of plaintiffs' second cause of action that purport to

19  allege a disparate impact discrimination claim for non-group terminations.[1]

20                                    **II. ANALYSIS**

21  **A.      Legal Standard**

22          A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.

23  Dismissal can be based on the "lack of a cognizable legal theory" or "the absence of sufficient facts

24  alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th

25  Cir. 1988). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations

26  in the complaint as true and construe them in the light most favorable to the non-moving party.

27

28  [1] Defendant does not move to dismiss plaintiffs' disparate impact discrimination claim with regard to the group terminations.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS—C-03-04529 RMW
KJ                                                              3

United States District Court
For the Northern District of California

1  *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994).  "[A] plaintiff's obligation to provide the

2  'grounds' of his 'entitlement to relief' requires more than labels and conclusions."  *Bell Atlantic Corp.*

3  *v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations and edit marks omitted).  Moreover,

4  "[f]actual allegations must be enough to raise a right to relief above the speculative level on the

5  assumption that all the allegations in the complaint are true."  *Id*. (citations omitted).  The court is

6  not required to accept conclusory legal allegations "cast in the form of factual allegations if those

7  conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness Network*,

8  18 F.3d 752, 754-55 (9th Cir. 1994).

9          **B.      Right to Affirmative Relief Under the OWBPA**

10          In 1990, Congress amended section 626 of the ADEA by enacting the OWBPA, which "is

11  designed to protect the rights and benefits of older workers" and "governs the effect under federal

12  law of waivers or releases on ADEA claims."  *E.E.O.C. v. UBS Brinson, Inc*., 2003 WL 133235, at

13  *3 (S.D.N.Y. 2003) (quoting *Oubre v. Entergy*, 522 U.S. 422, 427 (1998)).  Plaintiffs' complaint

14  seeks declaratory and injunctive relief for defendant's noncompliance with the OWBPA.  Defendant

15  argues that the OWBPA does not establish a right to affirmative relief.  Plaintiffs argue that courts

16  have recognized a cause of action under the OWBPA when such a claim is brought in conjunction

17  with discrimination claims under the ADEA because the OWBPA is part of the ADEA.[2]  Defendant

18  also contends that the text and structure of the OWBPA supports that the OWBPA only sets out

19  terms for the validity of ADEA waivers.  Plaintiffs argue that because the OWBPA is an amendment

20  to the ADEA, the ADEA's general enforcement provision, which existed before the OWBPA,

21  provides for affirmative relief for violations of the OWBPA.  The Ninth Circuit has not addressed

22  the issue of whether there is a right to affirmative relief under the OWBPA.  Moreover, although

23  several other courts have addressed this issue, courts appear to disagree on whether there is a right to

24  a claim for violation of the OWBPA.

25          Defendant argues that the text of the OWBPA contains no rights-creating language.

26  Defendant also argues that the OWBPA is styled a "Waiver" provision, and thus only provides that

27  non-knowing or involuntary waivers are unenforceable as to ADEA claims.  Plaintiffs argue that

28

[2]  The parties do not dispute that the OWBPA is an amendment to the ADEA.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS—C-03-04529 RMW
KJ                                                                                           4

**United States District Court**
For the Northern District of California

1   section 626(c)(1) of the ADEA which provides, "[a]ny person aggrieved may bring a civil action in

2   any court of competent jurisdiction for such legal or equitable relief as may be appropriate to

3   effectuate the purposes of this chapter," gives rise to a right to relief for violations of the OWBPA.

4   Because the OWBPA is an amendment to the ADEA, and it is part of the same chapter as the quoted

5   section of the ADEA, plaintiffs argue that there is affirmative relief under the OWBPA.  Plaintiffs

6   argue that section 626(c)(1) of the ADEA supports affirmative relief under the OWBPA because the

7   OWBPA was "introduced into the code not as a free-standing statute, but as multiple modifications

8   to various existing sections of the ADEA."  *See Commonwealth of Massachusetts v. Bull HN Info.*

9   *Sys., Inc*. ("*Bull*"), 16 F. Supp. 2d 90, 105 (D. Mass. 1998).  Because one purpose of the OWBPA

10  was to protect older workers from signing away their ADEA rights, plaintiffs further contend that it

11  would run contrary to make relief unavailable for violations for the OWBPA.  *See Krane v. Capital*

12  *One Servs., Inc*., 314 F. Supp. 2d 589, 605 (E.D. Va. 2004).

13          Defendant relies on the Tenth Circuit opinion in *Whitehead v. Okla. Gas & Electric Co.*,  187

14  F.3d 1184 (10th Cir. 1999), in arguing that there exists no right to affirmative relief under the

15  OWBPA.  In *Whitehead*, employees sued their employer under the Employee Retirement Income

16  Security Act ("ERISA"), OWBPA, and other federal statutes.[3]  187 F.3d at 1188.  The Tenth Circuit

17  held that dismissal of the OWBPA claim was proper because the employees did not assert a separate

18  ADEA claim.  *Id*. at 1192.  The Tenth Circuit held that "[t]he OWBPA simply determines whether

19  an employee has, as a matter of law, waived the right to bring a separate and distinct ADEA claim."

20  *Id*.  In addition, as defendant argues, courts in different districts have similarly held that the OWBPA

21  does not create an independent cause of action.  *See, e.g.*, *UBS Brinson*, 2003 WL 133235, at *3

22  (holding that most courts have determined that the OWBPA does not establish age discrimination by

23  itself).  In *UBS Brinson*, the court recognized that "[v]irtually every court that has decided the issue

24  of whether a violation of the OWBPA, by itself, establishes age discrimination has concluded that it

25  does not."  *Id*. at *3.  In *Halstead v. American International Group Inc*., 2005 WL 885200, at *2 n.5

26  (D. Del. 2005), the court held that "[b]y its plain terms, the [OWBPA] protects older employees

27

28  [3]  The employees also brought claims under the Veterans' Reemployment Rights Act and the
    Pregnancy Discrimination Act.

United States District Court
For the Northern District of California

from waiving their rights under the ADEA unknowingly or involuntarily.  It does not, however, create an independent right of action."  In *Halstead*, the plaintiff signed a release form in exchange for $147,000.  *Id*. at *1.  The plaintiff argued that the release was invalid because it was executed under duress.  *Id*. at *2.  The plaintiff then brought claims under the ADEA and the OWBPA.  *Id*. at *1.  The court concluded that the OWBPA "merely establishes minimum requirements for waivers in order to protect employees."  *Id*. at *2.

Plaintiffs argue that *Whitehead* is distinguishable because plaintiffs in that case brought a claim for violation of ERISA, and did not allege a violation of the non-OWBPA provisions of the ADEA.  Further, plaintiffs argue, in *Bull*, the district court allowed the state attorney general to proceed with claims under the OWBPA, holding that "the broad enforcement scheme articulated in subsection (c) of section 626 [of the ADEA] covers the waiver requirements articulated in subsection (f) of that section [the OWBPA]."  16 F. Supp. 2d at 105.  There, plaintiffs filed an age discrimination action claim against defendant Bull HN Information Systems ("Bull") for violations of the OWBPA and the ADEA.  *Id.* at 94.  Bull's severance plan requiring laid off employees to sign a waiver of rights, including ADEA rights, before receiving severance pay.  *Id*. at 94-95.  Under the waiver agreement, employees gave up their right to sue Bull for claims arising out of their employment.  *Id*. at 95.  The waiver agreement further provided that employees would be responsible for attorney's fees, costs, and expenses of defending a claim if they later brought a claim against Bull.  *Id*.  Over 50 employees were then laid off pursuant to Bull's employment termination program.  *Id*.  The employees were given the revised release and severance agreement.  *Id*.  Bull moved to dismiss the plaintiffs' action, arguing, *inter alia*, that plaintiffs failed to state a claim upon which relief was granted.  *Id*.  Bull argued that the only remedy provided under section 626(f) of the OWBPA for an invalid waiver agreement was that the waiver agreement was ineffective as a defense in an age discrimination suit.  *Id*. at 105.  The district court disagreed with Bull's reading of the OWBPA, noting that because the waiver agreement held former employees responsible for the costs of defending a suit, the agreement would act as a deterrent to individuals bringing ADEA claims.  *Id*. at 106.  The court reasoned that because the agreement would have a chilling effect on employees challenging the validity of the waiver agreement, the consequences of bringing a suit

United States District Court
For the Northern District of California

1   against a valid waiver would be to pay devastating penalties in the form of attorney's fees and costs

2   of defending the suit.  *Id*.

3     Although the *Bull* court's holdings are supported by policy concerns implicated by the facts

4   of that case, the court finds that defendant's arguments are supported by the plain text of the

5   OWBPA.  The OWBPA provides in relevant part:

6     (f) Waiver

7     (1) An individual may not waive any right or claim under this chapter unless the
  waiver is knowing and voluntary. Except as provided in paragraph (2), a waiver may
8     not be considered knowing and voluntary unless at a minimum--

9     (A) the waiver is part of an agreement between the individual and the employer that
  is written in a manner calculated to be understood by such individual, or by the
10    average individual eligible to participate;

11    ***

12    (3) In any dispute that may arise over whether any of the requirements, conditions,
  and circumstances set forth in subparagraph (A), (B), (C), (D), (E), (F), (G), or (H) of
13    paragraph (1), or subparagraph (A) or (B) of paragraph (2), have been met, the party
  asserting the validity of a waiver shall have the burden of proving in a court of
14    competent jurisdiction that a waiver was knowing and voluntary pursuant to
  paragraph (1) or (2).
15
  (4) No waiver agreement may affect the Commission's rights and responsibilities to
16    enforce this chapter. No waiver may be used to justify interfering with the protected
  right of an employee to file a charge or participate in an investigation or proceeding
17    conducted by the Commission.

18  29 U.S.C. § 626(f).  As defendant argues, the plain text of the OWBPA does not contain any rights-

19  creating language.  Nothing in section 626(f) suggests that the provision on release requirements

20  gives any equitable rights other than voiding the release.  Plaintiffs' argument that section 626(b)

21  provides broad relief for violations of the ADEA does not change the express text of the OWBPA,

22  which does not provide for such affirmative relief.  The plain text of the OWBPA is consistent with

23  those cases holding that the OWBPA only sets out the terms of an effective waiver and does not

24  create an independent cause of action.  *See, e.g., Halstead,* 2005 WL 885200, at *2; *UBS Brinson*,

25  2003 WL 133235, at *3.  In particular, the *Whitehead* court specifically noted that dismissal of the

26  suit was proper because an action under the OWBPA, by itself, could not give rise to a claim.  As

27  the Tenth Circuit held, based on its plain text, the OWBPA only sets out the requirements for a

28  waiver of ADEA claims.  *Whitehead*, 187 F.3d at 1191-1192 ("This language strongly indicates that

the OWBPA simply determines whether an employee has, as a matter of law, waived the right to bring a separate and distinct ADEA claim.").

Moreover, unlike in *Bull*, the waiver at issue here does not make plaintiffs responsible for attorney's fees and expenses of defending against a suit brought under the ADEA. Here, because the Ninth Circuit has already held the Release to be invalid, defendant's continued use of the Release would be contrary to the purpose of the OWBPA. Defendant also represented at oral argument on the motion that it has ceased using the defective waiver. Therefore, since defendant can no longer lawfully use and is not currently using the Release, the *Bull* court's concern that an agreement would have a chilling effect on employees bringing claims under the ADEA is not implicated here.[4]

In sum, the court concludes that the OWBPA, by its plain terms, does not create an independent cause of action. Therefore, the court grants defendant's motion to dismiss plaintiffs' OWBPA claim with prejudice.

### C.    Individual Terminations

Defendant also moves to dismiss those parts of plaintiffs' second cause of action asserting a claim for relief on a theory of disparate impact age discrimination with respect to individual terminations. Defendant argues that plaintiffs fail to identify the specific employment practice that purportedly caused a disparate impact on older workers who were individually terminated. Plaintiffs argue that they have stated a claim with enough specificity to survive a motion to dismiss.

In order to establish a *prima facie* case of disparate impact, plaintiff must: "(1) identify the specific employment practices or selection criteria being challenged; (2) show disparate impact; and

_____

[4] Plaintiffs also rely upon *Krane* for the proposition that they can assert an OWBPA claim for declaratory and injunctive relief. In *Krane*, the district court followed the *Bull* court's reasoning and concluded that

> [t]aken together, the relevant authorities, viewed in perspective of the statutory text and the statutory scheme involved, lead to the conclusion that, under section 626(c), an employee can seek declaratory and injunctive relief for a violation of the OWBPA provisions respecting waivers found in section 626(f).

However, the court also held that "a violation of section 626(f), standing alone, or without an accompanying ADEA age discrimination claim, is not viable because there is no monetary damage that can flow simply from a violation of the waiver provisions in section 626(f)." *Id.* *Krane* is not applicable here since, as noted above, the Release cannot be lawfully used and defendant has represented that it will no longer use the Release.

United States District Court
For the Northern District of California

1   (3) prove causation." *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir. 1990) (citing

2   *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988)).  To state a claim for disparate

3   impact under the ADEA, a plaintiff is responsible for identifying the specific employment practice

4   that led to the statistical disparities.  *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005).  In *Smith*,

5   the Supreme Court considered a police officer pay plan that was relatively less generous to older

6   workers than to younger workers.[5]  *Id*. at 241-42.  A higher percentage of police officers under 40

7   received raises greater than 10% than police officers over the age of 40.  *Id*. at 242.  Nevertheless,

8   the Supreme Court held that plaintiffs' claim failed to allege sufficient facts to support a disparate

9   impact claim under the ADEA because they did not identify any specific test, requirement, or

10  practice within the pay plan that has an adverse impact on older workers.  *Id*. at 241.  The court

11  reasoned that the failure to identify the specific practice being challenged is an omission that could

12  lead to employers being liable for many innocent causes that may lead to statistical imbalances.  *Id*.

13         Here, plaintiffs' allegations that defendant engaged in a pattern or practice of age

14  discrimination by treating older employees less favorably than younger employees are vague and

15  conclusory.  In *Rose*, the Ninth Circuit held that employment decisions left up to the subjective

16  discretion of a company's managers are subject to disparate impact analysis.  902 F.2d at 1424-25.

17  In the present case, plaintiffs do not name who made the employment decisions with regard to

18  individual terminations.  Plaintiffs also fail to name the specific times, places, and people involved

19  in the individual termination decisions and fail to identify the specific employment practices relevant

20  to the decisions.  Moreover, plaintiffs have also failed to allege facts supporting a conclusion that a

21  specific employment practice has caused a disparate impact on ADEA protected workers.  Thus,

22  plaintiffs do not sufficiently plead a claim for relief on a theory of disparate impact age

23  discrimination with respect to individual terminations.

24         Nevertheless, dismissal with prejudice is not warranted.  Plaintiffs may be able to amend

25  their complaint to cure these deficiencies.  *See* Fed. R. Civ. P. 15; *Foman v. Davis*, 371 U.S. 178,

26

27

28  ───────────────
    [5]  The police officer pay plan gave raises to all police officers in an attempt to keep their salaries
    competitive with the surrounding region.  *Smith,* 544 U.S. at 242.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS—C-03-04529 RMW
KJ                                             9

1   182 (1962) ("Rule 15(a) declares that leave to amend shall be 'freely given when justice so requires';

2   this mandate is to be heeded.").[6]

3                                         **III.  ORDER**

4         For the foregoing reasons, the court grants defendant's motion to dismiss plaintiffs' first claim

5   with prejudice and grants defendant's motion to dismiss those parts of plaintiffs' second claim

6   asserting disparate impact age discrimination with respect to individualized terminations with

7   twenty days' leave to amend.

8

9

10  DATED:        10/3/07                           _Ronald M Whyte_

11                                                  RONALD M. WHYTE
                                                    United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  [6]  Plaintiffs appear to seek limited discovery prior to filing an amended complaint.  The court denies
     plaintiffs' request.  "The purpose of [Fed. R. Civ. P.] 12(b)(6) is to enable defendants to challenge
28  the legal sufficiency of complaints without subjecting themselves to discovery."  *See Rutman Wine
     Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (citation omitted).

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS—C-03-04529 RMW
KJ                                                  10

**United States District Court**
For the Northern District of California

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

| | |
|---|---|
| Jeffrey Neil Young | jyoung@me-law.com |
| Patrick McTeague | pmcteague@me-law.com |
| Teresa Demchak | tdemchak@gdblegal.com |
| Morris J. Baller | mballer@gdblegal.com |
| Heather Mills | hmills@gdblegal.com |
| Christopher Platten | cplatten@wmpr.com |

**Counsel for Defendants:**

| | |
|---|---|
| Jeffrey D. Wohl | jeffwohl@paulhastings.com |
| Kerri N. Harper | kerriharper@paulhastings.com |
| Laura N. Monfredini | lauramonfredini@paulhastings.com |
| Jennifer A. Blackstone | jenniferblackstone@paulhastings.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**      10/3/07                                    /s/ MAG
                                              **Chambers of Judge Whyte**

United States District Court
For the Northern District of California

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS—C-03-04529 RMW
KJ                                              11